# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DEBRA A. LACEK,

    *Plaintiff*,

*v.*                            CASE NO. 13-CV-10092

COMMISSIONER OF           DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.      RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. **REPORT**

### A. **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 15.)

Plaintiff Debra A. Lacek was 47 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 27-28.) Plaintiff's work history includes employment as an office clerk for a dentist's office for 11 years. (Tr. at 120.) Plaintiff filed the instant claims on December 14, 2007, alleging that she became unable to work on April 1, 2006. (Tr. at 90, 94.) The claims were denied at the initial administrative stages. (Tr. at 48, 49.) In denying Plaintiff's claims, the Commissioner considered connective tissue diseases and affective disorders as possible bases for disability. (*Id.*) On February 5, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Henry Perez, Jr., who considered the application for benefits *de novo*. (Tr. at 9-24, 25-47.) In a decision dated May 25, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 19-20.) On November 22, 2011, Plaintiff requested a review of this decision. (Tr. at 508.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 28, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On January 10, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. **Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

4

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity since April 1, 2006, the alleged onset date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's carpal tunnel syndrome, fibromyalgia, chronic fatigue syndrome, and depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 14-15.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 18.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 43 years old, which put her in the "younger individual age 18 to 44" category. *See* 20 C.F.R. §§ 404.1563 and 416.963. At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 15-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 19-20.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated by Maran Askar, M.D., in 2006 and 2007 for carpal tunnel syndrome and stress. (Tr. at 154-59, 235-44.) An ultrasound of Plaintiff's abdomen taken on February 28, 2007, was normal. (Tr. at 160.) Plaintiff was also treated by David Altman, M.D., in 2007. (Tr. at 162.)

In 2007 and 2008, Plaintiff was treated by Narayan Verma, M.D., at Tri-County Neurology for fibromyalgia and slowed thinking, memory loss, and delayed sleeping. (Tr. at 163-78.) An MRI of Plaintiff's brain taken on July 2, 2007, showed "[s]ingle nonspecific high signal area right parietal subcortical white matter, likely related to long-standing small vessel disease and otherwise, the pre- and post contrast MRI appearance of the brain appeared unremarkable." (Tr. at 178.) An EEG taken on September 19, 2007, was normal. (Tr. at 171.)

On October 20, 2007, Kerry Nathan, P.A.C., completed a Medical Examination Report and Medical Needs statement for the Michigan Department of Human Services, wherein she opined that Plaintiff should never lift or carry, could stand or walk less than 2 hours in an 8-hour workday, could sit less than 6 hours in an 8-hour workday, should not perform simple grasping, reaching, pushing/pulling or fine manipulating with either hand or arms, and should not operate foot/leg controls based on severe carpal tunnel syndrome, fibromyalgia, and chronic pain. (Tr. at 181.)

Plaintiff underwent a consultative examination with E. Montasir, M.D., on March 22, 2008. (Tr. at 201-04.) Dr. Monastir found that Plaintiff's "[f]ine and gross dexterity is intact" and that she "ambulated reasonably well without ambulation aid," but "had difficulty with squatting and heel to toe was limited." (Tr. at 203.) Dr. Monastir noted that Plaintiff's "[g]eneral neurological evaluation showed no functional loss at this time." (*Id.*) The doctor also stated that Plaintiff's fibromyalgia "affects mainly the neck and the back and the lower extremities." (*Id.*)

Plaintiff underwent a consultative examination with L. Imasa, M.D., on March 22, 2008. (Tr. at 205-08.) Dr. Imasa diagnosed depressive disorder and generalized anxiety disorder, assessed a GAF score of 50, and gave a guarded prognosis. (Tr. at 206-07.) Five days later, on March 27, 2008, Dr. Verma stated that an "EMG/NCV showed carpal tunnel syndrome, sever rt, mild left." (Tr. at 245.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed on April 11, 2008, by Shahida Mohluddin, M.D. (Tr. at 217-30.) The assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and was unlimited in her ability to push and pull. (Tr. at 210.) The assessment also found that Plaintiff was occasionally limited in all postural areas except that she should never balance. (Tr. at 211.) There were no manipulative, visual, or

communicative limitations established. (Tr. at 212-13.) The assessment also found that Plaintiff should avoid extreme cold, heat and humidity but was otherwise unlimited in the environmental area. (Tr. at 213.) The assessment noted that it differed from the medical source statement dated October 2007, which limited lifting or carrying of any weight, limited standing or walking to two hours per day, sitting to less than six hours, and included no simple grasping, reaching, pushing, pulling or fine manipulation with either hand and no operation of foot controls because "this M[edical] S[ource] S[tatement] is only partially credible by the mer [medical evidence of record] in the file" such as the "CE [consultative examination] showing normal grip and dexterity." (Tr. at 215.)

A Psychiatric Review Technique was completed on April 17, 2008, by C. Jusino Berrios, which diagnosed affective disorders, i.e., depression, secondary to a physical condition. (Tr. at 217, 220.) Plaintiff was found to be mildly limited in activities of daily living and maintaining social functioning and moderately limited in maintaining concentration, persistence or pace. (Tr. at 227.)

A Mental RFC Assessment was completed on April 17, 2008, by C. Jusino Berrios. (Tr. at 231-34.) The assessment concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform within a schedule, and complete a normal workweek, but was otherwise not significantly limited in understanding, memory, sustained concentration or persistence. (Tr. at 231-32.) The assessment also found that Plaintiff was not significantly limited in social interaction or adaptation. (Tr. at 232.) The assessment concluded that Plaintiff is "able to understand, remember and execute simple instructions, able to maintain attention, sustain concentration, persistence and pace, adapt to changes and interact adequately." (Tr. at 233.)

In 2009, Plaintiff was treated by Gary L. Berg, M.D., for a cough. (Tr. at 251-52.) She was also treated that year at the Dean Clinic by R. Harris, D.O. (Tr. at 254-79.) On August 12, 2009, Dr. Harris opined that Plaintiff should never be required to lift or carry, should only be required to stand or walk for less than 2 hours in an 8-hour workday, sit for less than 6 hours in an 8-hour workday, did not need an assistive device for ambulation, and that she could not perform simple grasping, reaching, pushing/pulling, fine manipulating or operating leg/foot controls due to her carpal tunnel syndrome and fibromyalgia. (Tr. at 259.)

Plaintiff was treated in 2009 by Samir Zureick, M.D., for hypothyroidism. (Tr. at 280-84.) She was also treated by Neil H. Alperin, M.D., in 2009. (Tr. at 290-94.) On October 20, 2009, Dr. Alperin diagnosed "severe fibromyalgia and chronic widespread pain syndrome." (Tr. at 294.) On November 2, 2009, Dr. Alperin noted that Plaintiff had a "positive CCP and complains of joint pains, especially in the PIPs, MCPs and wrists. The wrists are tender. . . . She also has severe fibromyalgia, which makes her diagnosis difficult . . . ." (Tr. at 291.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> [could perform sedentary work with] the exertion limitation of lifting to ten pounds occasionally, five pounds frequently; we add sitting basically eight hours; standing, walking as needed with an aid; a sit-stand option; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling and crawling; no climbing ladders, ropes or scaffolds; jobs that would avoid concentrated exposure to extreme temperatures, humidity, use of power tools and jobs that would provide for routine production and stress and simple job assignments. Again putting this individual at the unskilled level . . . .

(Tr. at 45.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 4,000 visual inspector, sorter, and final assembler jobs in the Detroit area. (*Id.*)  The VE was then asked to also include other RFC findings:

no lifting; standing, walking less than two hours; sitting less than six hours; no grasping, reaching, pushing and pulling, fine manipulations; no foot or leg controls; and again the individual would be at routine production and stress and simple job assignments.

(Tr. at 45-46.) The VE responded that such a person would not only be unable to perform Plaintiff's past relevant work but would also not be able to perform any other jobs. (Tr. at 46.) In response to the ALJ's question, the VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") but also noted that the DOT does not address sit/stand options. (Tr. at 46-47.)

### F.      Analysis and Conclusions

### 1.      Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 15-18.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.        Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the "ALJ's residual functional capacity (RFC) finding and hypothetical question to the vocational expert failed to accurately portray Plaintiff's manipulative limitations (handling)," especially where the ALJ found Plaintiff's carpal tunnel syndrome was a severe impairment and where Dr. Nathan found limitations inconsistent with the ALJ's hypothetical. (Doc. 12 at 9-11.)

In the instant case, the ALJ appears to have relied on the RFC Assessment done by the non-examining source, Dr. Mohluddin, whose RFC assessment also did not contain any fingering or other  manipulative limitations. (Tr. at 45, 217-30.) Dr. Mohluddin noted that his opinion differed from the medical source statement dated October 2007 by Dr. Nathan.[2] (Tr. at 215.) Dr. Mohluddin found Dr. Nathan's assessment "only partially credible" because of other medical evidence in the file, such as the "CE [consultative examination] showing normal grip and dexterity." (Tr. at 215.)

---

[2] I note that Dr. Nathan's name is followed by P.A.C., which perhaps designates a physician assistant rather than a physician.

The consultative examining physician referred to by Dr. Mohluddin was Dr. Monastir, who did assess normal grip and dexterity. (Tr. at 203.)

Dr. Nathan's opinion that Plaintiff should not perform simple grasping, reaching, pushing/pulling or fine manipulating with either hand or arms and should not operate foot/leg controls based on severe carpal tunnel syndrome and fibromyalgia and chronic pain (Tr. at 181) is the same as the later August 2009 opinion of another treating source, Dr. Harris. Dr. Harris also opined that Plaintiff could not perform simple grasping, reaching, pushing/pulling, fine manipulating or operating leg/foot controls due to her carpal tunnel syndrome and fibromyalgia. (Tr. at 259.)

The ALJ rejected Dr. Nathan's opinion because "it was inconsistent with the objective medical evidence" and because "Dr. Nathan is not a treating physician." (Tr. at 17.) The ALJ rejected Dr. Harris's opinion because "it is not supported by objective medical evidence." (Tr. at 17-18.)

However, I suggest that the objective medical evidence is unequivocal that Plaintiff in fact suffers from carpal tunnel syndrome (Tr. at 245) and that the ALJ found it to be a severe impairment. (Tr. at 14.) In light of the evidence of record, I suggest that the ALJ's rote statement that there was a lack of objective medical evidence is insufficient to explain his decision to reject the opinion of Dr. Harris, a treating physician. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2); *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011). I further suggest that Dr. Harris's opinion is not so "patently deficient" that any failure to credit it could be harmless error. *See Cole*, 661 F.3d at 940 (quoting *Wilson*, 378 F.3d at 547). To the contrary, the presence of manipulative limitations in a medical opinion is consistent with and expected where there is a diagnosis of carpal tunnel syndrome. I therefore suggest that the

ALJ committed reversible error in failing to properly evaluate the opinion of Dr. Harris and that such failure cannot be harmless error. Accordingly, I recommend the case be remanded under sentence four of 42 U.S.C. § 405(g) to give the ALJ an opportunity to conduct the proper evaluation and make a proper RFC analysis.

On remand, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citations omitted)). This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner. *Id.*

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with

14

the objections, and shall address specifically, and in the same order raised, each issue contained

within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER

Dated: January 24, 2014                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 24, 2014                    By____s/Patricia T. Morris_____
                                              Law Clerk to Magistrate Judge Binder

15